IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **LODSYS, LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 2:11-cv-90-JRG |
| **BROTHER INTERNATIONAL** | § | **CONSOLIDATED** |
| **CORPORATION**, *et al.,* | § | |
| *Defendants.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

Pending before the Court are: (1) Defendant Hewlett-Packard Company's ("HP") Motion for Reconsideration of Order Denying Motion to Dismiss or, in the Alternative, To Sever and Transfer Venue (Dkt. No. 238); (2) Defendant Lexmark International, Inc.'s ("Lexmark") Motion for Severance From All Other Defendants (Dkt. No. 241); (3) Defendant GMCI Internet Operations, Inc. ("GMCI"), Playboy Enterprises, Inc. ("Playboy"), RK NetMedia, Inc. ("RK"), and Score Internet Group, LLC's ("Scores") Motion to Sever (2:12-cv-291, Dkt. No. 33); (4) Playboy's Motion to Transfer Venue (2:12-cv-291, Dkt. No. 29); (5) GMCI's Motion to Transfer Venue (2:12-cv-291, Dkt. No. 26); (6) RK's Motion to Transfer Venue (2:12-cv-291, Dkt. No. 32); (7) HSN, Inc.'s Combined Motions to (a) Dismiss, or Alternatively Sever, for Improper Joinder and (b) Dismiss for Improper Venue (2:12-cv-286, Dkt. No. 16); (8) Sam's West, Inc.'s ("Sam's West") Motion to Stay Proceeding on Allegations Already at Issue in Co-Pending Supplier Infringement Action (2:11-cv-283, Dkt. No. 103); (9) Becker Professional Development Corporation ("Becker"), Cabela's Inc. ("Cabela's"), Nike, Inc. ("Nike") and The Men's

Wearhouse's ("Men's Wearhouse") Motion to Stay Proceeding on Allegations Already at Issue in Co-Pending Supplier Infringement Action (2:11-cv-90, Dkt. No. 303); and (10) Foster and Smith, Inc. ("Foster and Smith"), Recreational Equipment, Inc. ("Recreational Equipment") and Walgreen Co.'s ("Wallgreen") Motion to Stay Proceedings on Allegation Already at Issue in Co-Pending Supplier Infringement Action (2:11-cv-90, Dkt. No. 304).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On February 11, 2011, Lodsys, LLC ("Lodsys") filed a patent infringement action against 12 defendants, accusing each of infringing U.S. Patent No. 7,620,565 entitled "Customer-Based Product Design Module" ("the '565 Patent") and U.S. Patent No. 7,222,078 entitled "Methods and Systems for Gathering Information from Units of a Commodity Across a Network" ("the '078 Patent"). *See Lodsys LLC v. Brother Int'l Corp, et al.,* Case No. 2:11-cv-90.

On May 31, 2011, Lodsys filed a second lawsuit against seven additional defendants. *See Lodsys Group, LLC v. Combay, Inc., et al.,* Case No. 2:11-cv-272. On June 10, 2011, Lodsys filed a third lawsuit against ten additional defendants. *See Lodsys Group, LLC v. Adidas America, Inc., et al.,* 2:11-cv-283. On July 5, 2011, Lodsys filed a fourth lawsuit against five additional defendants. *See Lodsys Group, LLC v. DriveTime Automotive Group, Inc., et. al.,* Case No. 2:11-cv-309. Finally, on May 10, 2012, Lodsys filed seven separate and additional lawsuits against a total of thirty-two additional defendants. *See Lodsys Group, LLC v. Bank of America Corp., et al.,* Case No. 2:12-cv-284; *Lodsys Group, LLC v. Foster and Smith, Inc., et al.,* Case No. 2:12-cv-287; *Lodsys Group, LLC v. Rosetta Stone, Inc.*, Case No. 2:12-cv-288; *Lodsys Group, LLC v. Dell, Inc.*, Case No. 2:12-cv-289; *Lodsys Group, LLC v. AVG Tech. USA, Inc., et al.,* Case No. 2:12-cv-290; *Lodsys Group, LLC v. GMCI Internet, Inc., et al.,* Case No. 2:12-cv-291.

2

In addition to the '565 and '078 Patents, U.S. Patent No. 5,999,908 ("the '908 Patent") is also at issue in several of the above-captioned cases.  One or more of the '565, '078 or '908 Patents are at issue in each of the above-captioned cases, but each patent is not necessarily asserted against each Defendant.

On August 17, 2012, the Court entered an Order consolidating each of the above-captioned cases ("the Lodsys cases") for pre-trial purposes.  (Dkt. No. 258.)  Due to the size and complexity of the Lodsys cases, the Court solicited case management proposals from all parties regarding the possibility of "grouping" or "phasing" similarly situated Defendants for *Markman* and pretrial purposes.  (Dkt. No. 302.)  The parties' responded with case management proposals that identified three areas of agreement.  First, the parties agreed that consolidation of all the Lodsys cases is the most preferable and efficient case management technique.  Second, the parties agreed that one consolidated *Markman* hearing was preferable to phased *Markman* hearings involving logical groups of Defendants.  Third, the parties agreed that all of the Lodsys cases should be provided the same jury selection date, and that any issues related to the timing or phasing of jury trials should be taken up after the Court issues its *Markman* Order.  (*See* Dkt. Nos. 312, 313 and 314.)  On September 17, 2012, the Court entered an Order maintaining the consolidated status of the Lodsys cases and scheduled a common *Markman* hearing date of April 16, 2013.  (Dkt. No. 329.)

The Court now turns to and addresses certain outstanding motions regarding issues including severance, transfer and requests for stay:

## III.  HP'S MOTION FOR RECONSIDERATION (DKT. NO. 238)

On June 6, 2011, HP filed a Motion to dismiss Lodsys' claim for misjoinder under Fed. R. Civ. P. 20(a) and 21 or, in the alternative, to sever the claims against HP under Fed. R. Civ. P.

21 and transfer the severed claims to the Southern District of Texas.  (Dkt. No. 102.)  On March 8, 2012, the Court entered an Order denying HP's Motion to Dismiss or, in the Alternative, to Sever and Transfer Venue.  (Dkt. No. 172.)  The Court denied HP's Motion on the grounds that joinder in this case is proper because there is a "logical relationship" between the various accused products of the co-defendants.  *Id.*  In response, HP filed a petition for a writ of mandamus of the Court's order, arguing that the "logical relationship" test applied by the Court is insufficient to satisfy the joinder requirements of Rule 20.

While HP's petition was pending, the Federal Circuit issued an opinion in the case of *In re EMC Corp* which clarified the requirements for joinder in a patent infringement case.  677 F.3d 1351 (Fed. Cir. 2012).  Following the issuance of the *In re EMC* opinion, the Federal Circuit denied HP's petition for a writ of mandamus and directed HP to move this Court for reconsideration in light of the *EMC* opinion.  *In re Hewlett-Packard Co.,* Misc. Dkt. No. 123, Order at 2 (filed in this Court as Dkt. No. 236.)

The Court has the authority to grant a motion for reconsideration under Fed. R. Civ. P. 59(e).  *Hamilton v. Williams*, 147 F.3d 367, 379 (5th Cir. 1998).  Grounds for granting such a motion include: "(a) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice."  *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002).  Reconsideration is warranted in this case because *In re EMC* is an intervening change in the controlling law.

### A.    Joinder and Severance

Joinder under Fed. R. Civ. P. 20(a)(2) creates a two prong tests, allowing joinder of multiple defendants when (1) their claims arise out of the "same transaction, occurrence, or

series of transactions or occurrences" and (2) there is at least one common question of law or fact linking all the claims. *Acevedo v. Allsup's Convenience Store, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010); *Ams. For Fair Patent Use, LLC v. Sprint Nextel Corp.*, 2011 WL 98279 at *2 (E.D. Tex. Jan 12, 2011).  The Federal Circuit's *In re EMC* decision clarifies that the "same transaction" requirement of FRCP 20(a)(2) is not satisfied in patent infringement actions where a plaintiff accuses similar products sold by unrelated defendants of infringing the same patents.  *In re EMC Corp.*, 677 F.3d at 1357-60.  Rather, the "sameness requirement" of *In re EMC* holds that [j]oinder of independent defendants is only appropriate where the accused products or process are the same in respects relevant to the patent." *Id*. at 1359.  Thus, even the "existence of some similarity in the allegedly infringing products or processes, similarity which would exist simply because the same patent claims are alleged to be infringed," cannot satisfy the "same transaction" requirement under Rule 20(a)(2).  *Id*.  The Federal Circuit also required the plaintiff to show that the underlying claims of infringement shared an aggregate of operative facts:

> In addition to finding that the same product or process is involved, to determine whether the joinder test is satisfied, pertinent factual considerations include whether the alleged acts of infringement occurred during the same time period, the existence of some relationship among the defendants, the use of identically sourced components, licensing of technology agreements between the defendants, overlap of the products' or processes' development and manufacture, and whether the case involves a claim for lost profits.

*Id*. at 1359-60.  Thus, "[u]nless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical. *Id*. at 1359.

HP argues that this Court's earlier finding that the defendants' products are sufficiently related because they allegedly infringe the same patents in similar ways does not comply with the Federal Circuit's opinion in *In re EMC*.  HP further argues that its products are not "the

same" as those of its co-defendants and any similarities in the manner in which the various products allegedly infringe is purely coincidental.  (Dkt. No. 238, at 3.)  HP also contends that the "shared pertinent operative facts" prong is not met in this case because Lodsys does not allege that the acts of infringement occurred during the same time period; it does not allege any relationship among the defendants; it does not allege the defendants use identically sourced components in their products it does not allege there are licensing or technology agreement among the defendant; it does not allege an overlap of the products' development and manufacture; and it does not allege a claim for lost profits.  *Id*. at 3 (citing *In re EMC*, 677 F.3d at 1359-60.)

Lodsys responds with three arguments.  *First*, Lodsys argues that *In re EMC* did not reject the "logical relationship" applied by this Court in the March 8, 2012 Order (Dkt. No. 172). (Dkt. No. 246, at 2.)  *Second*, Lodsys contends that HP mischaracterizes the alleged differences between the defendants' accused products.  *Third*, Lodsys reasons that severing and transferring the claims against HP would impose a substantial burden on both the judicial system and Lodsys. Should severance be granted, Lodsys asks the Court to exercise its broad discretion to consolidate the severed action with the remaining defendants in this case.   (Dkt. No. 246, at 2.)

The Court agrees with HP.  *In re EMC* constitutes a change in application of the joinder provisions as formerly applied in the Eastern District of Texas.   Under the two-prong test articulated by the Federal Circuit, joinder in patent infringement cases is appropriate when: (1) the accused products to be "the same in respects relevant to the patent"; and (2) the underlying claims of infringement "share an aggregate of operative facts."  *In re EMC*, 677 F.3d 1351, 1359 (Fed. Cir. 2012).   Here, Lodsys has not shown that the accused products are the "same" in respects relevant to the patent.    The Complaint alleges that each of the Defendants

6

"manufactures, uses, sells, imports, and/or offers to sell infringing printers," but it does not explain how such printers are the "same" as defined by *In re EMC*. Lodsys also alleges that each of the defendants "makes, sells, offers to sell, and/or uses infringing computer server(s) to collect data" in conjunction with each defendants' commodities, regardless of the specific type of product or process." However Lodsys again provides no explanation of how such products are the "same" under the *In re EMC* test. It is clear that each of the accused products are independently designed and manufactured by the various defendants who, in fact, compete with one another in the marketplace. (Dkt. No. 251, at 3.) The fact that all of the accused products are "printers" or "servers" is not sufficient to justify joinder in light of *In re EMC*. HP's Motion to Sever is well founded.

      **B.**    **Transfer**

Since HP has shown that it is entitled to severance, the Court turns next to whether the severed action should be transferred to the Southern District of Texas pursuant to 28 U.S.C. § 1404. Lodsys is a Texas limited liability company with its principal place of business in Marshall, Texas. (Dkt. No. 112, at 2.) HP is headquartered in Palo Alto, California, but its Regional Sales Office in the United States and the hub of the activities potentially relevant to this case is located in Houston, Texas. (Dkt. No. 102, at 11.) According to HP, the teams involved in the development and operation of one of the accused products, are located at its Houston Facility.

      *1.*    *Legal Standard*

Change of venue is governed by 28 U.S.C § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. §

1404(a).  However a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff.  *Nintendo*, 589 F.3d at 1197; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

The initial question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district.  *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004).  If the transferee district is a proper venue, then the court must weigh the relative public and private factors of the current venue against the proposed venue.  *Id.*  In making such a convenience determination, the Court considers several "private" and "public" interest factors, none of which are dispositive alone.  *Id.*  The "private" interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.  The "public" interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law."  *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

The Court finds there to be no dispute that this suit could have been originally brought in the Southern District of Texas.  Accordingly, the Court next moves to consider the public and private interest factors as outlined above.

2.      *Analysis of the Public and Private Interest Factors*

A comparison of HP's presence in Houston and Lodsys' presence in Marshall as to the relative ease of access to sources of proof, the cost of attendance for willing witnesses, and the local interest factors weigh in favor of transfer.  Most of the remaining factors are neutral or do not apply.  However, this realization alone is not sufficient to reach a conclusion as to transfer.  There are undeniably compelling facts and circumstances in this case that arise from the judicial economies to be realized by maintaining Lodsys' claims against HP in this District.  These outweigh the other public and private factors that might otherwise favor transfer.[1]  The Court reaches this conclusion for three primary reasons.

*First*, the Court has invested a substantial amount of time and resources managing the several the Lodsys cases described above.  In such regard, the Court solicited and considered case management proposals, held scheduling conferences to coordinate *Markman* hearings and trial schedules, and entered common docket control, discovery, and protective orders that apply to each Defendant in each Lodsys case.  Further, the Court studied and reviewed the asserted-patents in this case.  Such study was necessary to address and resolve substantive issues of patent law, including but not limited to this series of motions to dismiss and/or sever.  If Lodsys' claims against HP are transferred to the Southern District of Texas, another District Judge will be required to duplicate these substantial efforts on matters with which this Court is already familiar.  This would unavoidably turn any traditional notion of judicial economy on its head.

---

[1] The Court may deny Motions to Transfer Venue based solely on judicial economy.  *See In re Vistaprint Ltd.,* 628 F.3d 1342, 1345-47 (Fed. Cir. 2010) (holding that district court may properly deny § 1404(a) transfer based on judicial economy even "when all of the convenience factors clearly favor transfer"); *In re Google*, 412 F. App'x 295, 296 (Fed. Cir. 2011) ("Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice and having one trail court decide all of these claims clearly further that objective")

*Second*, while Lodsys has accused a number of different products of infringing the asserted patents, its claims against HP each relate to printers and computers.  Many other defendants stand accused of making, using or selling infringing printers including Brother, Canon, Lexmark and Samsung, but none of these Defendants have filed a Motion to Transfer Venue. (Dkt. No. 246, at 8.)  Transferring Lodsys' claims against HP to the Southern District of Texas would create two parallel streams of litigation, each involving the same patents and accusing very similar products.  This sort of duplication would generate exactly the sort of inefficiencies that the §1404(a) was designed and adopted to prevent.

*Third*, the relatively short distance between Marshall, Texas and the Southern District of Texas renders the marginal convenience gains realized by HP's witnesses located in or around Houston less significant, particularly in light of the overall size and complexity of the Lodsys cases that remain before this Court.  The drive from Houston to Marshall takes approximately three and a half hours (200 miles or so) via major United States highways, such as U.S. 59 (which is the principal vehicular corridor between Mexico and Middle America).  Air travel is well-established between both Houston airports (Bush and Hobby) and Shreveport, which is only 33.8 miles (or 39 minutes by interstate highway) from the U.S. Courthouse in Marshall, Texas.  While testifying in Marshall is less convenient for HP's Houston-based witnesses than testifying in their hometown, overall the trip is not demanding, especially when one acknowledges the delays and difficulties of travel in and around Houston, Texas.  Such marginal convenience gaines realized by the handful (at most) of HP witnesses who would be required to travel to Marshall, Texas is far outweighed by the gross inefficiencies that will be generated by granting HP's motion to transfer.

### C.      Conclusion

The Court **ORDERS** that the claims pertaining to HP be severed into a separate cause of action.  Lodsys shall pay the filing fee for this case within ten (10) days of this order issuing to avoid having the severed cause of action dismissed with prejudice.  Further, the Court **ORDERS** the new case be **CONSOLIDATED** for all pretrial issues (except venue) with the lead case, 2:11-cv-90.  The parties are instructed to file any future motions in the lead case until further Order of the Court.  The docket control, discovery, and protective orders entered in the lead case will govern the consolidated action, including the claims pertaining to HP.

For the reasons discussed above, the, the Court **DENIES** HP's Motion to Transfer Venue to the Southern District of Texas.  The inefficiencies that would be created by granting such transfer are significant, while the inconveniences that would be created by denying such transfer are relatively minor.  On balance, the public and private §1404(a) factors do not show that the Southern District of Texas is a clearly more convenient forum than the Eastern District of Texas.

### IV.     LEXMARK'S MOTION FOR SEVERANCE (DKT. NO. 241)

Lexmark moves for severance under Fed. R. Civ. P. 20 and 21 in view of the Federal Circuit's ruling in *In re EMC*.  (Dkt. No. 241.)  Lexmark's arguments in favor of severance and Lodsys' arguments in opposition are substantially the same as discussed above with regard to HP.  (Supra III.A).  Accordingly and for the same reasons as discussed above, the Court **GRANTS** Lexmark's Motion and **ORDERS** that the claims pertaining to Lexmark be severed into a separate cause of action.  Lodsys shall pay the filing fee for this case within ten (10) days of this order issuing to avoid having the severed cause of action dismissed with prejudice.  Further, the Court **ORDERS** the new case be **CONSOLIDATED** for all pretrial issues (except motions to transfer venue) with the lead case, 2:11-cv-90.  The parties are instructed to file any

future motions in the lead case.  The docket control, discovery, and protective orders entered in the lead case will govern the consolidated action, including the claims against Lexmark.

## V.   GMCI INTERNET OPERATIONS, INC., PLAYBOY ENTERPRISES, INC., RK NETMEDIA INC. AND SCORE INTERNET GROUP, LLC'S MOTION TO SEVER (2:12-CV-291, DKT. NO. 33)

GMCI Internet Operations, Inc., Playboy Enterprises, Inc., RK Netmedia Inc. and Score Internet Group, LLC[2] ("Website Defendants") move for severance under Fed. R. Civ. P. 20 and 21 in view of the Federal Circuit's ruling in *In re EMC*.  (Dkt. No. 241.)  The Website Defendants' arguments in favor of severance and Lodsys' arguments in opposition are substantially the same as discussed above with regard to HP.  (Supra III.A).  Accordingly and for the same reasons as discussed above, the Court **GRANTS** the Website Defendants' Motion and **ORDERS** that the claims pertaining to the Website Defendants (other than Score) be severed into a separate cause of action.  Lodsys shall pay the filing fee for this case within ten (10) days of this order issuing to avoid having the severed cause of action dismissed with prejudice. Further, the Court **ORDERS** the new case be **CONSOLIDATED** for all pretrial issues (except venue) with the lead case, 2:11-cv-90.  The parties are instructed to file any future motions, other than motions to transfer venue, in the lead case.  The docket control, discovery, and protective orders entered in the lead case will govern the consolidated action.

## VI.   PLAYBOY ENTERPRISES, INC.'S MOTION TO TRANSFER VENUE (2:12-CV-291, DKT. NO. 29)

Defendant Playboy Enterprises, Inc. ("Playboy") moves to transfer the claims against it to the United States District Court for the Southern District of Florida.  (2:12-cv-291, Dkt. No. 29.) Playboy argues that transfer is appropriate because it "has no meaningful connection to this District; its principal place of business in California and the anticipated witnesses with relevant,

---

[2] One of the parties' to this Motion, Score Internet Group, LLC ("Score"), was dismissed from this action on December 4, 2012.  (Dkt. No. 464.)

material information are located in the Southern District of Florida and other districts, many of them closer to the Southern District of Florida than to the Eastern District of Texas." *Id.*  Lodsys responds that Playboy has not shown that transfer to Florida is "clearly more convenient … particularly given that the Court has already consolidated this action with the other nine related actions pending in this Court."  (2:12-cv-291, Dkt. No. 47, at 1.)

Lodsys is a Texas limited liability company with its principal place of business in Marshall, Texas.  *Id.*  Playboy is a Delaware corporation with its principal place of business in Los Angeles, California (2:12-cv-291, Dkt. No. 29, at 2) and its principal executive offices in Chicago, Illinois.  (2:12-cv-291, Dkt. No. 47, at 3.)  The basis for Lodsys' infringement allegation is that "Playboy manufactures, uses, sells, imports and/or offers to sell infringing adult websites with try and buy subscription solicitations, including but not limited to www.playboy.com."  (Compl., at ¶ 2.)  According to Playboy, the witnesses it believes to be most knowledgeable about the accused 'try and buy subscription solicitations' are located in California.  (2:12-cv-291, Dkt. No. 29, at 2.)  Playboy also states that its "design, development, and operation of the accused 'try and buy subscription solicitations' associated with Playboy's website … involve various vendors.  *Id.*, at Meklir Decl., ¶ 5.  Witnesses associated with such vendors are likely located in "Miami, Florida; Charlotte, North Carolina; Morganville, New Jersey; and Montreal, Canada." *Id.*, at 2.

After carefully considering the §1404(a) factors as outlined above (Supra III.A.), the Court finds that transfer is not warranted in this case.  The most that Playboy has shown is that one of the many vendors of its 'try and buy subscription solicitations" is located in the Southern District of Florida.  The remainder are scattered throughout North America, including various venues in the United States and Canada.  Further, the majority of Playboy's own documents are

13

located in either California or Canada.  Lodsys, on the other hand, is a Texas Limited Liability Corporation with its principal place of business in Marshall, Texas.  On balance, the presence of one Playboy vendor in Florida taken in context with the other venue facts does not merit transfer to the Southern District of Florida.  Also, for the same reasons as discussed above with regard to HP, considerations of judicial economy play a significant role in the Court's conclusion.  A number of Lodsys cases have been pending in this Court for some while.  This Court has invested its limited time and resources in these cases.  This Court has become familiar with the patents-in-suit.  These facts lead this Court to conclude that such traditional notions of judicial economy strongly disfavors transfer in this case.  On balance, this is not a case where transfer is warranted under §1404(a) and Playboy has not met its burden to show that transfer is clearly more convenient.  Playboy's Motion to Transfer (2:12-cv-291, Dkt. No. 29) is **DENIED**.

## VII.   GMCI INTERNET OPERATIONS, INC.'S MOTION TO TRANSFER VENUE (2:12-CV-291, DKT. NO. 26)

Defendant GMCI Internet Operations, Inc. ("GMCI" moves to transfer the claims against it to the United States District Court for the Northern District of California.  (2:12-cv-291, Dkt. No. 26.)  GMCI is incorporated in New York, but has a principal place of business in Boca Raton, Florida.  *Id*., at 2.  GMCI's corporate records are also located in Florida.  *Id*.  GMCI's accused website, www.penthouse.com, is supported and hosted from servers located in Sunnyvale and Santa Clara, California.  *Id*.  GMCI claims that it has eight employees having knowledge of this case, seven residing in California and one in New York.  *Id*.  GMCI contends that its most knowledgeable employee about the accused "try and buy subscription solicitation" service is located in Sunnyvale, California.  *Id*.  Lodsys' arguments in response are substantially the same as discussed above with regard to Playboy.

After carefully considering the §1404(a) factors, the Court finds that this is not a case where transfer is warranted.  The presence of a handful of GMCI witnesses in California does not outweigh the significant judicial economy gains already in place will be lost by transferring this case.  (*See* SUPRA III.A and VI.).  GMCI has not met its burden to show that transfer in this case is clearly more convenient.  GMCI's Motion to Transfer (2:12-cv-291, Dkt. No. 26) is **DENIED**.

## VIII.   RK NETMEDIA, INC.'S MOTION TO TRANSFER VENUE (2:12-CV-291, DKT. NO. 32)

Defendant RK Netmedia, Inc. ("RK") moves to transfer the claims against it to the United States District Court for the Southern District of Florida.  (2:12-cv-291, Dkt. No. 32.)  This Motion offers nothing new which is beyond the earlier motions to transfer dealt with above.  After considering each of the §1404(a) factors, and particularly judicial economy, the Court finds that this is not a case where transfer is warranted for the same reasons as discussed above with regard to Playboy and GMCI.  Accordingly, RK's Motion to Transfer (2:12-cv-291, Dkt. No. 32) is **DENIED**.

## IX.    HSN, INC.'S COMBINED MOTIONS TO (A) DISMISS, OR ALTERNATIVELY SEVER, FOR IMPROPER JOINDER, AND (B) DISMISS FOR IMPROPER VENUE (2:12-CV-286, DKT. NO. 16)

HSN, Inc. ("HSN") moves to (1) sever HSN into a new action and (2) dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1400(b) on the grounds that venue is improper in this District.  (2:12-cv-286, Dkt. No. 16.)

### a.  Severance is Warranted

HSN's arguments in favor of severance and Lodsys' arguments in opposition are substantially the same as discussed above with regard to HP.  (Supra III.A).  Therefore, for the same reasons as discussed above, the Court **GRANTS** HSN's Motion to Sever and **ORDERS**

that the claims pertaining to HSN be severed into a separate cause of action.  Lodsys shall pay the filing fee for this case within ten (10) days of this order issuing to avoid having the severed cause of action dismissed with prejudice.  Further, the Court **ORDERS** the new case be **CONSOLIDATED** for all pretrial issues (except venue) with the lead case, 2:11-cv-90.  The parties are instructed to file any future motions in the lead case.  The docket control, discovery, and protective orders entered in the lead case will govern the consolidated action.

### b.  Venue is Proper

#### i.    Applicable Law

"Venue in a patent action against a corporate defendant exists wherever there is personal jurisdiction." *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.,* 395 F.3d 1275, 1280 (Fed. Cir. 2005).  There are two kind of personal jurisdiction – specific and general.  "Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if those contacts are 'isolated and sporadic' … General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." *Id* (citing *LSI Indus. v. Hubbell Lighting, Inc.,* 232 F.3d 1369, 1375 (Fed. Cir. 2000)).

#### ii.    Analysis

In this case, HSN's extensive business dealing in and with this District are more than sufficient to confer general personal jurisdiction.   HSN's website: solicits customers in this District, facilitates interactions with those customers, sells products to those customers, and ships products to addresses in Texas.  (2:12-cv-286, Dkt. No. 37, at 18.)  It is well-established in this district that this sort of activity is sufficient to confer personal jurisdiction.  *See Versata Software, Inc. v. Internet Brands, Inc.*, 2:08-cv-313, 2009 WL 3161370, *2 (E.D. Tex. Sept. 30, 2009) ("Case law demonstrates that operation of an interactive website similar to the defendants'

is sufficient to established personal jurisdiction over out of state defendants.); *see also Seoul Semiconductor Co. v. Nichia Corp.*, 2008 WL 452444, at *1 (E.D. Tex. Sept. 10, 2008) ("The website is more than just a passive site and provides sufficient interactivity to satisfy the minimum contacts requirement.").

In addition to HSN's website, HSN also provides continuous and systematic contacts with this District by virtue of HSN's ubiquitous television-based shopping service.  HSN's home shopping channels appear in many thousands of Texas homes, and HSN sells and ships myriad products to Texas customers who order via the channels.  (2:12-cv-286, Dkt. No. 27, Ex. O.) Having general jurisdiction over HSN, HSN resides in this District for purposes of venue. HSN's Motion to Dismiss for Improper Venue is **DENIED**.

## X.    SAM'S WEST, INC.'S MOTION TO STAY PROCEEDINGS ON ALLEGATIONS ALREADY AT ISSUE IN CO-PENDING SUPPLIER INFRINGEMENT ACTION (2:11-CV-283, DKT. NO. 103)

Sam's West moves to stay the claims asserted against it in favor of a pending declaratory judgment suit filed by RightNow Technologies, Inc. ("RightNow"), the manufacturer of the system deployed by Sam's West that allegedly infringes the asserted patents.  (2:11-cv-283, Dkt. No. 103.)   RightNow filed its declaratory judgment action against Lodsys in the Eastern District of Wisconsin on August 4, 2011, approximately two months after Lodsys filed this action against Sam's West.  *Id*.  Sam's West asks this Court to stay Lodsys' claims against it on the grounds that the "customer suit exception" warrants resolving the suit against RightNow (the manufacturer) before the suit against Sam's West (the customer).  *Id*.

### A.    Legal Standard

A "district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.,* 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).  In deciding whether to stay litigation, this Court considers: "(1) whether a stay will

unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Soverain*, 356 F. Supp. 2d at 662.

Generally, when two districts are handling cases with the same parties and issues presented, the law "favors the forum of the first-filed action." *Tegic Commc'ns Corp. v. Bd. Of Regents of Univ. of Tex. Sys.,* 458 F.3d 1335, 1343 (Fed. Cir. 2006); *Pragmatus Telecom, LLC v. The Neiman Marcus Group*, 6:11-cv-620, Dkt. No. 122 (E.D. Tex. Nov. 20, 2012). This is often called the "first-filed rule." However, an exception to the "first-filed rule" exists in certain patent cases where "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed. Cir. 1990). Whether this exception (the "customer-suit exception") applies requires a three-factor analysis: (1) whether the customers are merely resellers; (2) whether the customers agree to be bound by any decision in the manufacturer's case; and (3) whether the manufacturer is the sole source of infringing products. *Tegic*, 458 F.3d at 1343; *see also Pragmatus Telecom, LLC v. The Neiman Marcus Group, Inc.*, 6:11-cv-620, Dkt. No. 122 (E.D. Tex. Nov. 20, 2012).

### B.   Analysis

The customer-suit exception does not apply in this case. Sam's West is not a "mere reseller" of RightNow's technology according to the *Tegic* test articulated by the Federal Circuit. Sam's West implements RightNow's technology as one component of its e-commerce website. Visitors to Sam's West website then merely interact with Sam's West's website in general, which happens to include RightNow's technology. In no way does Sam's West "resell" RightNow's technology to its customers. Accordingly, the Court finds that Sam's West is not a

"mere reseller" of RightNow technology.  *See Pragmatus Telecom,* 6:11-cv-620, Dkt. No. 122 (finding that Defendant is not a "mere reseller" because they purchase accused software which is then used by visitors to Defendant's website).

Sam's West also argues that "[e]ven if the Court were to find that the customer suit exception does not squarely apply here, the same policies underlying that doctrine still weigh heavily in favor of such a stay."  (2:11-cv-283, Dkt. No. 103, at 10.)  The Court disagrees.  In addition to its claims against Sam's West, Lodsys accuses Brother, HP, Hulu, Lexmark, Novell, Samsung and Trend of infringement using live chat and feedback soliciting technology.  (2:11-cv-283, Dkt. No. 133, at 4.)  Even if this action were to be stayed, this Court will still be required to adjudicate substantially similar issues in Lodsys' other first-filed actions.  That result is nonsensical and does not support the underlying policies alluded to by Sam's West.  It is undisputed that the present case was filed ***before*** the declaratory judgment action in Wisconsin. There is no reason not to follow the first-filed rule in this case.  Sam's West Motion to Stay is **DENIED**.

## XI. BECKER PROFESSIONAL DEVELOPMENT CORPORATION, CABELA'S INC., CHARMING SHOPPES, INC., NIKE, INC., AND THE MEN'S WEARHOUSE, INC. MOTION TO STAY PROCEEDINGS ON ALLEGATIONS ALREADY AT ISSUE IN CO-PENDING SUPPLIER INFRINGEMENT ACTION (DKT. NO. 303)

Defendants Becker Professional Corporation, Cabela's Inc., Charming Shoppes, Inc., Nike, Inc., The Men's Wearhouse, Inc. ("RightNow Defendants") move to stay these proceedings based on allegations based on proceedings in the co-pending supplier infringement action against RightNow.  Each of the Defendants arguments are substantially the same as discussed above with regard to Sam's West.  (Supra X).  None of these movants presents a basis upon which the first-filed rule should not be followed.  Therefore, for all of the reasons discussed above, the RightNow Defendants' Motion to Stay is **DENIED**.

**XII.   FOSTER AND SMITH, INC., RECREATIONAL EQUIPMENT, INC., AND WALGREEN CO.'S MOTION TO STAY PROCEEDINGS ON ALLEGATIONS ALREADY AT ISSUE IN CO-PENDING SUPPLIER INFRINGEMENT ACTION (DKT. NO. 304)**

Defendants Foster and Smith, Inc., Recreational Equipment, Inc. and Walgreen Co. ("Oracle Defendants") move to stay these proceedings based on allegations based on proceedings in the co-pending supplier infringement action against Oracle America, Inc. ("Oracle"). Lodsys' infringement allegations against the Oracle Defendants are largely based on their use of Oracle technology. (Dkt. No. 304.) Approximately three weeks after Lodsys brought this suit against the Oracle Defendants, Oracle filed a declaratory judgment action in the Eastern District of Wisconsin. *Id*. Effectively, the Oracle Defendants' arguments and Lodsys' response are the same as discussed above with regard to Sam's West and the RightNow Defendants. Therefore, for all the reasons discussed above, the first-filed case controls and the Oracle Defendants' Motion to Stay is **DENIED**.

**V.     CONCLUSION**

For the reasons discussed above, the Court therefore resolves the pending Motions in this case as follows: (1) HP's Motion for Reconsideration of Order Denying Motion to Dismiss or, in the Alternative, To Sever and Transfer Venue (Dkt. No. 238) is **GRANTED** as to the issue of severance, but **DENIED** as to transfer; (2) Lexmark's Motion for Severance From All Other Defendants (Dkt. No. 241) is **GRANTED**; (3) GMCI, Playboy, RK, and Score's Motion to Sever (2:12-cv-291, Dkt. No. 33) is **GRANTED**; (4) Playboy's Motion to Transfer Venue (2:12-cv-291, Dkt. No. 29) is **DENIED**; (5) GMCI's Motion to Transfer Venue (2:12-cv-291, Dkt. No. 26) is **DENIED**; (6) RK's Motion to Transfer Venue (2:12-cv-291, Dkt. No. 32) is **DENIED**; (7) HSN's Combined Motions to (a) Dismiss, or Alternatively Sever, for Improper Joinder and (b) Dismiss for Improper Venue (2:12-cv-286, Dkt. No. 16) are **GRANTED** as to

severance, but **DENIED** as to improper venue; (8) Sam's West's Motion to Stay Proceeding on Allegations Already at Issue in Co-Pending Supplier Infringement Action (2:11-cv-283, Dkt. No. 103) is **DENIED**; (9) Becker, Cabela's, Nike and The Men's Wearhouse's Motion to Stay Proceeding on Allegations Already at Issue in Co-Pending Supplier Infringement Action (2:11-cv-90, Dkt. No. 303) is **DENIED**; and (10) Foster and Smith, Recreational Equipment and Walgreen's Motion to Stay Proceedings on Allegation Already at Issue in Co-Pending Supplier Infringement Action (2:11-cv-90, Dkt. No. 304) is **DENIED**.


**So ORDERED and SIGNED this 14th day of January, 2013.**


RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE